## Parsons v. Phipps.

### PARSONS v. PHIPPS.

The acceptor of a bill *is a competent witness* for the plaintiff in a suit by the payee against the drawer to prove that his acceptance was for the accommodation of the drawer.

The rule that a party cannot be made a witness in his own case is applicable only where his testimony is offered in his own behalf, or where the opposite party offers to make him a *witness without his consent.* If the opposite party call him and he is willing to testify, he is a competent witness, notwithstanding the objection of his codefendants or coplaintiffs, provided his interest, if any, in the suit be adverse to that of the party by whom he is called. (Note 73.)

Where suit is brought under our statute against all the parties to a promissory note or bill of exchange, the competency of these parties as witnesses is not affected by the joinder of them in the same suit.

The doctrine that a party to a negotiable instrument, interest or no interest, is an incompetent witness to impair its validity or credit examined and rejected. (Note 74.)

Appeal from Galveston. Parsons sued Phipps and Innes on a draft drawn by Phipps on Innes in favor of Parsons, [342] and accepted. One term of court had passed after the maturity of the draft before the suit was commenced. There was a verdict and judgment for the plaintiff, against Innes the acceptor and against the plaintiff, in favor of Phipps, the drawer. It appeared from a bill of exceptions that on the trial the plaintiff called Innes as a witness, who made no objection to testify, and proposed to prove by him that the draft upon which the suit was founded had been accepted by him merely for the accommodation of Phipps, and that he had no funds of said Phipps's in his hands, either at the time of drawing the said draft or when the same became due. Phipps objected to the competency of the witness, 1st, because he was a party upon the record, and, 2d, because he was acceptor of the draft. The court sustained the objection, and the plaintiff, by his counsel, excepted. Innes had not appeared as a party in the case, had not answered, and judgment by default had been rendered against him. The final judgment by default, however, had been set aside at the instance of the plaintiff before he was called to testify.

*O. C. Hartley*, for appellant.

I. The only error assigned is, the rejection of the testimony of one George B. Innes, who was offered as a witness on behalf of appellant.

The witness was acceptor of the bill sued on, and he was called to testify that it had been accepted for the *accommodation* of Phipps. The materiality of the testimony is obvious. If such was the fact, then Phipps was the principal debtor; no protest or notice of non-payment would have been necessary, according to the mercantile law; and under our statute (vol. 4, p. 144) due diligence would not have been required in order to fix the liability of Phipps.

II. It was objected that Innes was incompetent because he was acceptor of

171

the bill. But see 2 Smith's L. C., 39; 2 Stark. Ev., 258; 1 Esp. R., 332; 2 Campb. R., 310; Peak on Ev., 154.

III. It was also objected that Innes was incompetent because he was a party to the record.

[**343**] The act of 1836 (vol. 1, p. 148, sec. 41) adopted the common law of England as to juries and evidence "as now practiced and understood." The act of 1840 (vol. 4, p. 3) adopts the common law in so far only as it was not in conflict with acts of Congress. The question which we are discussing is one of evidence, and is to be decided by the common law of England as practiced and understood in 1836.

The point underwent a thorough examination in the courts of Common Pleas and King's Bench shortly previous to the adoption of the common law by the Republic, and the unanimous decision of both those courts was that a joint defendant as to whom judgment had gone by default was a competent witness on behalf of the plaintiff against the other defendant. (7 Bing. R., 395; 2 Ad. & El. R., 732; 4 Esp. R., 198; 1 Taunt. R., 378; Gilb. Ev., 130, 4th Ed.; 10 East. R., 395.)

The only remaining question on this head is, did Innes have any interest in favor of a recovery by the appellant because of his being a party to the record? What little interest Innes apparently had in the event of the suit was in favor of a recovery by the appellee. If the appellent had obtained judgment against both for the amount of the bill and cost, Innes would have been, in the first instance, liable for the whole debt and costs. But if appellant did not recover judgment against the appellee, then Innes was liable for the amount of the debt and so much only of the cost as accrued between him and appellant.

So much of the costs of the action as accrued between the appellant and appellee would be collected off the former. See judgment in the case.

Innes was therefore interested adversely to the appellant to the amount of more than one half the costs of the action. But the result of this suit could not affect the ultimate rights of Phipps and Innes between themselves as acceptor and drawer.

[**344**] LIPSCOMB, J. We propose to discuss the objections to the competency of the witness offered and rejected in the court below, first, on the ground of interest in the result of the suit, and, secondly, on the ground of his being on the bill sued on as acceptor.

The first will be subdivided, first, on the interest of the witness as acceptor of the bill, and, secondly, his being a party on the record in the suit.

On the first I cannot perceive any interest in the result of the suit that could go to his disqualification as a witness. As acceptor he was liable on the bill, under any circumstances that did not show that it was void in its incipiency as against law, to the payee, the plaintiff, whether he had accepted on a fund drawn on or as an accommodation to the drawer. If he is the accommodation acceptor, and should pay and satisfy any judgment that might be rendered against him as acceptor in a suit he might institute against the drawer, neither the judgment nor the bill itself could be made the foundation of his action against the drawer. (Close v. Fields, 2 Tex. R., 235; Chitty on Bills, 569.) If, then, a judgment in this suit could not be evidence in his favor as between himself and the drawer, he had no such interest in the result of the suit as would have rendered him an incompetent witness.

The next inquiry then is, does the fact of his being a party to this suit as a defendant give him such an interest in the result as to make him incompetent as a witness for the plaintiff when he is willing to testify in the action? This question is thought not to have been well settled in the United States. The dictum often found in the books, that a party to the suit cannot be made a wit-

### Parsons v. Phipps.

ness in his own case, is perhaps correct as a general maxim. This rule is perhaps not strictly applicable to any other state of the case but to his being offered to support his own side of the question. Should, however, the opposite party choose to waive the objection and risk such evidence, I cannot perceive how, on [345] principle, he could be rejected on the ground of incompetency. He could not be called on against his will to testify; but if willing, and called by the opposite party, it would seem that, on principle, he ought to be held a competent witness. This is believed to be the doctrine of the Supreme Court of Pennsylvania in Taylor v. Henderson, (17 S. & R., 453.) Not having the authority before me, I cite a note by the publishers of Smith's Leading Cases on the above case: "The Supreme Court of Pennsylvania determined that a party to a suit could not be examined as a witness, even in opposition to his own interest, *against his consent*, and that when a writ issued on a joint cause of action, against several defendants, those not served with process were parties within the meaning of the rule. It would seem that this exemption is, however, in that state, only for the party *individually* claiming it, and intended to save his conscience from the stress to which it might be put by an examination against the real or supposed interests which he may believe to arise from his peculiar position; for it may be waived by him, and if so, it cannot be claimed by the other parties on the record. They can only object to the testimony of the party where he is called to swear in support of his own interest, but not when he is called to give evidence against it, nor when he is without interest in the event of the suit, though a party to the action." (Steele v. Phenix Ins. Co., 3 Bin. R., 306; Perviance v. Dryden, 3 S. & R. R., 402; Willings v. Consequa, 1 Pet. C. C. R., 307.)

In New York it is held that a party cannot be a witness, not even with his consent, and it applies where he is without interest or is called to give evidence against his interest. (4 Wend. R., 457.) The rule established by the courts of New York would seem to be hard to reconcile to sound principles, and if sustainable at all, it must be by circumstances of policy that in the opinion of the court required its adoption. It is singular that the acknowledgments of a party out of court could be made evidence if against his interests, and yet he [346] would not be permitted to swear to these facts before a jury, though willing to do so. In courts of equity there is no doubt a party may be compelled to testify against himself; and in England, on common-law rules of evidence, in the courts of law, for a long time a party had been permitted to give evidence, if called upon by the adverse party and he is willing to testify.

There is a case reported in 1 Taunton, 378, of Williamson & Twibill v. Norden. The plaintiffs were partners in trade. On the trial defendant called Twibill, the plaintiff, as a witness, and on his evidence the jury returned a verdict for the defendant. On a rule for a new trial on the ground that Twibill's testimony was inadmissible, Mansfield, Ch. J., (not Lord Mansfield,) said: "This is a new case. I never before remember a plaintiff to have been called as a witness, and perhaps the same thing may rarely occur again. Since the decision in Lord Melvill's case, it is no longer law that a man cannot be compelled to answer against his civil interests; but suppose that decision will not extend to compel a plaintiff to answer in his own cause at least, I know no reason why, if the defendant is willing to admit him, and the plaintiff is willing to give evidence against himself, he shall not be suffered to do so. If his evidence proves adverse, the consequences must fall on the defendant who ventured to call him." The case of Worrall v. Jones, Jones & Baker, reported in 7 Bing., 395, was debt on a bond, conditioned for payment of rent on an ancient lease, by Edward Jones, one of the defendants. The two Jones suffered judgment to go by default. Baker alone pleaded that the lease expired in 1816, and averring that up to that time the rents had been paid. The plaintiff called Edward Jones, who proved that his tenacy continued, under his contract, from 1806 up to 1829. The plaintiff obtained a verdict; and on a rule for a new trial on the ground that his evidence was inadmissible, on the hearing,

Parsons v. Phipps.

Chief Justice Tindal, at Hilary Term, 1831, gave the judgment of the court. He says: "At the trial of this [**347**] issue the plaintiff proposed to call the said Edward Jones to prove the continuance of the ancient tenancy. No objection could arise on the ground that Edward Jones was interested to procure a verdict for the plaintiff, who called him, inasmuch as, being the principal debtor, he could not call for contribution from the other defendants, and must himself be ultimately liable, both in the costs and damages recovered in this action. The witness did not himself object to being examined, but the objection was made on the part of Baker, the defendant who pleaded; and the question reserved for our consideration is whether a defendant who has suffered judgment by default, and who consents to be examined, is ·an admissible witness when he has no interest in the event of the suit, and the only objection to his inadmissibility is that he is a party upon the record; and upon this question we are of opinion that the evidence was admissible. No case has been cited, nor can any be found, in which a witness has been refused upon the objection in the abstract that he was a party to the suit." In the case of Pipe *et al.*, Adm'r, *v.* Steele & Hawey (2 Ad. & El. R., 732) the same doctrine is declared in the opinion of Lord Denman, in which the case of Worrall *v.* Jones *et al.* is referred to as one of great authority; and after commenting on the reasons urged against the admissibility of such evidence, Lord Denman proceeds: "Now, if the principle of disqualification for interest be the fear that a witness may be tempted to commit perjury in favor of the party calling him, and it should appear that, in the actual position of this cause, the defendant, who was produced as a witness for the plaintiff, was interested directly the other way, it would appear to us that the reason for excluding fails, and the witness ought to be received."

The principles of these decisions seem to rest entirely on the question of interest; and if the party is not called as a witness on his own side of the case, but by the party adverse to him, his competency cannot be objected to. That [**348**] he cannot be forced to testify against his will is equally well settled in court of common law. And the reason why he cannot is obvious; it is because to purge the conscience of a party and compel a disclosure against himself belongs peculiarly to another jurisdiction. Is there anything in the particular circumstances of the witness in the case under consideration that went to his competency when he was offered and rejected in the court below?

A case in its features precisely like the one before us cannot be found decided by any court governed by the common-law rules of practice; and to this peculiarity must be ascribed whatever difficulty there may be in the application of the rules of evidence to negotiable paper. At common law the parties to a bill of exchange presenting different liabilities in relation to each other could not be joined in the same action, but each distinct liability required a separate suit for its enforcement. Now, if the suit had been brought at common law by the holder of the paper against the drawer or indorser, there could be no question as to the competency of the acceptor as a witness. (2 Stark. Ev., 257.) The suit in this case was brought under our statute against ·the drawer and acceptor jointly. Can the fact of the acceptor being so joined in the suit with the drawer render him an incompetent witness when called by the plaintiff? If so, it cannot be, according to the cases cited, on the abstract ground of his being a party to the suit; it must be on account of an interest in the result of the suit. In the cases above cited, where one of the defendants was called, the witness called in each case had suffered judgment by default; and it may have been thought that as judgment had already been given against him, his testimony could not affect the judgment. That distinction might have some force if the witness had been called by his codefendant who had pleaded on the issue presented by the plea; but when called by the plaintiff, it is not perceived on what principle his competency could be objected to, whether there had been a judgment by default or not. As the acceptor he

## Parsons v. Phipps.

stood immediately liable to the plaintiff in the suit, and had such an interest in the result of the suit as would have disqualified him had he not been called by the plaintiff. The plaintiff was willing, however, to incur the risk of his evidence being adverse. As acceptor he was liable to the drawer ultimately, but not in this suit; and even if his testimony could acquit him, yet such verdict could not be used in his favor or against him in another suit, if one should be brought against him by the drawer. Hence it seems that the codefendant could not object to his competency. We will, however, now define the position of the acceptor in this case, and see if in fact it was in principle essentially different from what it would have been had a judgment been taken against him by default. The record shows that he had not answered, and that a default had been taken against him, but from some cause—probably because the counsel thought it would be irregular, under our statute that directs that there shall be but one judgment, to enter up the judgment until after a verdict against his codefendant, and then include both in the same judgment—the default was set aside on motion of the plaintiff's counsel. His standing, then, when the cause was put to the jury, was without plea or answer, and the jury had nothing to do with him; he had not put himself before them. Had the verdict been for the plaintiff on the issue, he could not then have been joined in the same judgment with his codefendant after the verdict; and I cannot perceive that his position, under such circumstances, as to his competency, was different than if there had been a judgment by default standing against him. It would seem, both on principle and the authority of adjudged cases, that as to the question of competency, founded on any supposed interest the witness had in the suit, he ought to have been admitted.

There remains to be considered another objection to the competency of the witness, not resting on interest, but founded, as its advocates allege, on principles of the soundest policy. This objection is that no party to a bill is a competent witness, [350] interest or no interest in the result, to impair its legal validity or its credit. This objection received the sanction of a judicial decision and was acknowledged as a rule of law in the case of Walton v. Shelley, (1 T. R., 164.) In that case the objection taken and urged by counsel was to the competency of the witness, not on the ground of policy, but that, though not interested in the result of the suit, he was interested in the question. Lord Mansfield, after expressing the opinion that there was nothing in the objection to the witness on that ground, and declaring and approving the modern tendency of courts to go as far as possible consistent with the authorities, to let the objection go rather to the credit than to the competency of a witness, proceeds: "But what strikes me is the rule of law, founded on public policy, which I take to be this: that no party who has signed a paper or deed shall ever be permitted to give testimony to invalidate that instrument which he has so signed. And there is sound reason for it; because every man who is a party to an instrument gives a credit to it. * * * The civil law says, *Nemo allegans suam turpitudinem est audiendus.*" Willes, Ashurst, and Buller, justices, concurred with the Chief Justice on the rule that no man should be permitted to allege his own turpitude. The supposed rule of the civil law that seems to have influenced the judges in this case has been denied to have any existence in the Roman code, (Gilm. R., 275;) but whether it be a maxim in the Roman code or not, when well and correctly applied it is an axiom of truth and sound morality; it is not, however, applicable to witnesses, but to parties; and it is that no man shall be permitted to allege in his own defense his own turpitude. This is doubtless the correct version, and it is the one given by eminent jurists in England and America. This rule, though sustained by the great name of Lord Mansfield, one of the most learned jurists of his day, did not long survive his lordship. The case of Bent v. Baker (3 T. R., 27) was tried before the King's Bench, Lord Kenyon then occupying the same position that [351] Lord Mansfield had in the same court when Walton v. Shelley was tried. The question presented was one of incompetency on the ground of interest; in

Parsons v. Phipps.

which the same views were expressed by the court—to lean in all such questions, to let the objection go to the credibility rather than to the competency, and to reduce the number of objections to competency. The court held that the objection was not well taken. This case has been supposed to have relieved the question of competency from much obscurity and embarrassment thrown around it by the previous conflicting decisions. And it is further remarkable in this that in the report Lord Kenyon is made to say that the rule laid down that a witness could not be heard to testify against what he had sanctioned by his name was not sound in all cases. "I therefore entirely agree with the distinction taken by my brother Buller, that where a person has signed a negotiable instrument, he shall not be permitted to invalidate it by his testimony. But that is not the case here." This sanction of Lord Mansfield's rule, it will be seen by and by, was declared by Lord Kenyon to have been an interpolation, and that he had never uttered it. This case was not a case on a negotiable note, and therefore any expression as to any particular rule in such cases was not called for and not therefore laid down. As far, however, as the case went it did not infringe the rule in Walton v. Shelley. It was on a policy of insurance, and it permitted the broker who had procured it to be executed to testify against it, although he had witnessed it. In this the rule, if not denied, was certainly restricted and qualified.

It was, however, in the memorable case of Jordaine v. Lashbrooke (7 T. R., 603 and 604) in which the rule in Walton v. Shelley was fully and fairly encountered and entirely subverted. It was a suit on a bill of exchange against the acceptors. The bill is as follows : "Hamburg, 30th December, 1799. For £100. At three usances pay this my first bill of exchange to the order of Messrs. J. Thynne & Co., £100 sterling, value in account, and place it to account of G. [352] W., as advised by David Hinr. Meijer. To Messrs. T. Lashbrooke & Son, London ;" which was accepted by the defendants and indorsed by Thynne & Co. At the trial Thynne was called by the defendants to prove that the bill, though dated at Hamburg, was in fact drawn in London, in which case it could not be received in evidence, it not being stamped. On the part of the plaintiff it was objected that it was not competent to the defendants, who had accepted the bill, to produce any evidence to show that the bill was void in its creation, and if it were, that Thynne, the payee and indorser, was not a competent witness to prove the fact. The objection was overruled, and the admissibility of this testimony was submitted to the judges of the Court of King's Bench. Lord Kenyon : "The question for our consideration is whether it was proved by competent testimony that the bill, which professed to be a foreign bill and drawn at Hamburg, was really drawn in England. The case has been argued most ably, and every topic has been brought forward on the part of the plaintiff that bears upon the point ; but still I have a very strong opinion upon the question, which I wish to deliver now, lest it should be supposed that I entertain doubts upon it. The proposition attempted to be established by the plaintiff is this : that for some technical reason, or for some reasons of policy, a court of justice must shut its ears and not suffer facts to be disclosed which may be laid before them by a witness who is not infamous in his character and who has no interest in the cause. If the law be so, there is some novelty in it. I have always understood the rule to be that where the witness is infamous, and his record of conviction is produced, or where he is interested in the event of the cause, he cannot be received ; but to carry the rule beyond that would be extending it farther than policy, morality, or the interest of the public require. The rule contended for by the plaintiff is this : that however infamously you (the defendant) may have been used, whatever fraud may have been committed on you, whatever may be the rights of other [353] persons, if I, (the plaintiff,) the party to the fraud, can get on the instrument the name of the person who may be the only witness to the transaction, I will stand intrenched within the forms of law, and impose silence on that only witness, though he be a person of unimpeachable character and not interested in the cause." The whole of the opin-

## Parsons v. Phipps.

ion is interesting, but it is not convenient to insert it here. He says: "It has been argued that the defendant is estopped in this case; but estoppels are odious, and ought not to be extended farther than the law has already carried them. The word *estoppel* does not apply to such a case as the present. When the drawee accepts a bill, he admits the bill was signed by the person by whom it professes to have been made, but he does not thereby admit the holder of the bill is in a condition to enforce payment of it." He proceeds: "But I wish to correct an expression imputed to me in the report of that case, (Bent *v.* Baker,) 'that where a person has signed a negotiable instrument, he shall not be permitted to invalidate it by his testimony;' because having frequently weighed this subject in my mind, and having not only entertained a contrary opinion, but having always acted upon that opinion at *nisi prius*, I think I never could have used the expression imputed to me."

Mr. Justice Ashurst, who had participated in the decision of Walton *v.* Shelley, dissented from the opinion of Lord Kenyon and supported his former opinion, and based it on the policy of supporting the paper currency of the kingdom as the life of the commercial prosperity of the country. Grose and Lawrence, justices, concurred with the Chief Justice, and gave very learned and interesting opinions. The doctrine of this case is believed never to have been questioned from the time of its ruling down to the present in the courts of England. In the American courts, however, there has been quite a diversity of opinion. In the case of the Bank of the United States *v.* Dunn (6 Pet. R., 51) the Supreme Court of the United States affirmed the doctrine laid down in Walton *v.* Shelley. [354] Judge McLane, who delivered the opinion of the court, rests the decision of the court apparently entirely on that case; and in the Bank of the Metropolis *v.* Jones (8 Pet. R., 12) the decision in the preceding case is supposed by Mr. Justice Barbour to be sustained by reason and authority. But it seems that, however well satisfied in the previous decisions, the court changed its ground in United States *v.* Leffler (11 Pet. R., 86) and in Scott *v.* Lloyd, (12 Pet. R., 145,) from which cases it would seem that the rule acknowledged by Mr. Justice Barbour to be sustained by reason and authority has been either repudiated or subjected to many exceptions. It is believed that the doctrine laid down by Lord Kenyon in Jordaine *v.* Lashbrooke is sustained and followed by much the greater number of the American State Courts; and many able adjudications may be found in favor of receiving such testimony, particularly in the courts of New York; but in none with which I have met has there been more research and ability shown than by Judge Whipple, of the Supreme Court of Michigan, in the case of Orr *v.* Lacey, (2 Doug. R., 230.)

It will be seen that the rule in Walton *v.* Shelley was never known to the jurisprudence of England (so says Lord Kenyon, Grose and Lawrence, justices, in Jordaine *v.* Lashbrooke) until adopted by Lord Mansfield in that case. And it is known to every jurist that, although Lord Mansfield was one of the ablest judges who ever presided in the Court of King's Bench, he had so thoroughly convinced himself that the prosperity, if not the very existence, of his country depended on its commerce, and that this subject engrossed the entire energies of his great mind to such an extent that he often lost sight of the means to effect the prevailing wish of his heart in giving strength and thereby extending the influence of the commercial interest of the nation. Hence it has been said that during the period that he presided in the King's Bench he made more laws for the regulation and encouragement of commerce than were made by king and Parliament during the longest and most prosperous reign. When, therefore, he boldly lays down a new rule on the subject of evidence, because it is called for [355] to give credit to and sustain the paper circulation on which he supposes commerce to depend, it is but too clear that he was exercising legislative jurisdiction, and did not confine himself to his judicial powers. It does seem, therefore, that the rule in Jordaine *v.* Lashbrooke is well sustained on sound legal principles; and that it is most abundantly supported by adjudged cases there can be no doubt.

The distinction between the credibility and competency of evidence had in

many instances been so metaphysical as to present the most absurd results; such as, when it is ruled to be a law of evidence that the smallest possible interest in the result of the suit, when that interest, small as it might be, if to be acted on by the judgment in the cause, constituted such an objection as to preclude the evidence, yet a person not directly so interested may have an interest indirectly to a large amount, and depending upon precisely the same question, and can be a witness. An only son and a forced heir to an aged father tottering on the brink of the grave, and, by the operation of the laws of nature, incapable of long withholding a large estate from that son, yet, in a suit involving the title to that very estate, the son is a competent witness for his father; but if he had become security for costs, however small the amount, he would be incompetent. Jurists have for a long time felt and acknowledged this defect, and it has given rise to this rule: that whenever the question of interest is at all doubtful, to permit the evidence to go to the jury, with the objections arising from the circumstances under which the witness swears, to be considered by the jury as going to his credibility. This rule was laid down as long ago as the time of Lord Hardwick, and was so laid down by him in the case of King v. Bray, (R. Temp. II., 360.) It was acknowledged by Lord Mansfield in Walton v. Shelley, and by Lord Kenyon in Bent v. Baker. Backed by such authority, if we had been doubtful as to the competency of the evidence offered in the case before us, we would have decided that it ought to have been received; but in truth the question is free from all doubt. The judgment must be reversed and the cause remanded.

NOTE 73.—Dial v. Crain, 10 T., 444; Hall v. Murphy, 14 T., 637; Wane v. Bennett, 18 T., 794; McGown v. Randolph, 26 T., 492.
NOTE 74.—Hillebrant v. Ashworth, 18 T., 307.

